[Civ. No. 17418. Second Dist., Div. One. July 10, 1950.]

LEON EAMOE, Appellant, v. BIG BEAR LAND AND WATER COMPANY (a Corporation), Respondent.

Clifton A. Hix for Appellant.

Charles A. Bank for Respondent.

WHITE, P. J.—This is an appeal from a judgment of nonsuit in a jury trial. It was alleged in the complaint "for fraud and negligent representations" that defendants Edgar Blackshaw and Vic Lichtig, as agents for defendant Big Bear Land and Water Company, showed to plaintiff a parcel of land and stated that it was described as Lots 2 and 3 of Block 164; that plaintiff, relying upon such representation, signed an agreement to purchase said parcel; that plaintiff was informed he could immediately commence the erection of a house on the parcel, and plaintiff did so; that after plaintiff had expended $2,000 for labor and materials, he learned for the first time, on or about July 18, 1946, that the land he had selected and built upon was not Lots 2 and 3 of Block 164, but Lots 2 and 3 of Block 159, and that the land he

had built upon was not owned by defendant land and water company. About August 1, 1946, the owners of the lots in Block 159 demanded that plaintiff remove his structure from their premises and he did so. It was further alleged that "plaintiff has elected to retain Lots 2 and 3 of Block 164 of Tract No. 2312, as described in his contract of purchase from the defendants although said land are lots which this plaintiff did not select and had never seen until after July 18, 1946." Damages of $5,000 were claimed "because of the misrepresentation of defendants as aforesaid."

Defendant Edgar Blackshaw, one of the agents of the corporate defendant, died shortly before the trial, and as to defendant Vic Lichtig, the evidence failing to show that he participated in the transaction so far as the showing to plaintiff of the wrong property was concerned, the action was, during the trial, dismissed as to each of the foregoing defendants, leaving Big Bear Land and Water Company as the sole defendant.

It appears that defendant Blackshaw, a sales agent, on April 6, 1946, showed plaintiff two lots (Lots 2 and 3 of Tract 159). These lots were located between Teal and Shore Drive and faced Barker Boulevard. Plaintiff made a deposit and received a receipt in which the property was described as Lots 2 and 3 of Block 164, and the receipt further showed the location of the property as facing Barker Boulevard between Teal and Shore Drive.

At the same time plaintiff signed a contract of sale in blank, which defendant land and water company was to fill in and mail to plaintiff. Plaintiff asked permission of the agents to proceed with building upon the lots he had selected and was told he could do so. The formal contract was executed by defendant land and water company and mailed to plaintiff. It described Lots 2 and 3 of Tract 164, but contained no description of their location with reference to streets.

Plaintiff was told by the sales agents that he could proceed with building if he desired. On July 6, 1946, he commenced building a house on Lot 3 of Block 159 (one of the two lots he thought he had purchased). On July 18, 1946, he first learned that the lots described in the receipt and the formal contract were located in another block. On August 1, 1946, in compliance with the demand of the owners, he had the house removed from the lot, and thereafter it was reassembled on Lot 3 of Block 164. On September 30, 1946, a new contract

was entered into for the purchase by plaintiff of Lot 2 of Block 164, and on November 4, 1946, plaintiff received a grant deed to Lot 3 of Block 164. Thereafter plaintiff sold Lot 3, with the house thereon, for $2,000.

■ The sole question for decision is whether plaintiff is precluded from recovering against the principal, Big Bear Land and Water Company, by reason of the provision contained in the installment purchase contract reading as follows:

"This contract contains the entire agreement of the parties, it being understood that the authority of Seller's Agents is limited and confined to securing purchasers for its property upon the terms and conditions set out in this agreement, and not otherwise; that sales representatives have no power or authority to make any change, alteration, modification, stipulation, inducement, promise or any representation whatsoever other than those herein stated; that said sales representatives are acting as special agents, and all representations not herein set forth are by Buyer deemed waived.

"It is a specific and special consideration moving to Seller for its acceptance of this contract, that Buyer waives reliance upon any representation, inducement, promise or understanding either at variance with the express provisions herein contained, or not herein specifically mentioned and described; and that but for such waiver Seller would not accept or execute this agreement."

It has been settled in this state since the decision in *Speck* v. *Wylie,* 1 Cal.2d 625 [36 P.2d 618], that a principal may protect himself from liability for damages arising from unauthorized fraudulent representations of his agent, by means of a provision such as that above quoted. Such a provision, however, does not preclude a defrauded purchaser from rescinding and recovering the consideration paid from the innocent seller. (Rest., Agency, §§ 259, 260; *Herzog* v. *Capital Co.,* 27 Cal.2d 349, 353 [164 P.2d 8], and authorities there cited.) A seller cannot, however, by such a provision, relieve himself of the consequences of his own breach of duty (*Herzog* v. *Capital Co., supra*; *Rothstein* v. *Janss Investment Corp.,* 45 Cal.App.2d 64 [113 P.2d 465]).

We are not here confronted with a case where a purchase of property was induced by material representations fraudulently made by the agent of the seller who was in charge of the negotiations. There is no showing here other than that the agent who negotiated the sale was himself a victim of the mistaken belief that the legal description of the lots he ex-

hibited to plaintiff was as set forth in the contract of purchase. While it is the law, as is stated in *Speck* v. *Wylie, supra,* at page 627, that ''A principal may, by contract with another, relieve himself of liability in deceit for prior or subsequent frauds of an agent to such other,'' and that the person damaged under such circumstances is restricted to rescission and securing a return of the consideration paid, we are impressed that the foregoing limitation is not applicable to a situation such as the one now confronting us. As so cogently stated by Mr. Justice Shenk in his concurring opinion in the case of *Speck* v. *Wylie, supra,* at page 628. ''The rule proceeds upon the theory that an innocent principal so contracting may not be permitted to enrich himself by reason of his agent's *fraud,* . . . .'' (Emphasis added.) And as we read the rule, it is intended to protect an innocent principal, and the public generally, from misrepresentations, careless or deliberate, on the part of an agent with respect to the quality, size, condition, nature, and other attributes of the specific property to be sold. Here the representations were not made regarding the subject matter of the contract, such as its value, its mineral content, its condition, its prospects for enhancement in value, the repurchase thereof, etc.

The argument that respondent, Big Bear Land and Water Company, was an innocent principal in the present case, that when appellant learned of the mistake made by respondent's agent, appellant elected not to rescind but to affirm a contract for the purchase of lots he had not intended to buy, and under the rule announced in *Speck* v. *Wylie, supra,* he has no cause of action against the respondent, ignores a fact present in the instant case which distinguishes it from the ordinary case of fraudulent representations of an agent unauthorized by the principal with respect to the *subject matter* of a sale. The selling agents in the case now before us were acting within the scope of their ostensible authority when they showed appellant the lots, told him those were the lots he was buying, gave him a receipt purporting to describe correctly the lots which they had shown him, and negligently permitted their mistake to be carried into the formal contract. The recognized and legitimate purpose of the exculpatory provision is to protect an innocent principal against liability for statements of an agent beyond the scope of his actual authority by notifying the purchaser of the limits of the agent's authority. Manifestly, despite the provision, the purchaser was justified

in believing that the agent had authority to show and sell property of the principal, knew which property belonged to the principal, and was authorized to issue a receipt containing a correct description of the property displayed. Furthermore, it may reasonably be assumed that the principal here relied on the agent to describe the property correctly, since it executed and sent to plaintiff a contract containing the same description as that given by the agent.

Where the true owner of property holds out another as having full power of disposition over the property, and innocent third parties are thus led into dealing with such agent, they will be protected. The rights of third parties in such cases are derived from the act of the principal in permitting the agent to hold himself out as having full power to contract with reference to the property. The rights of third parties under such circumstances do not depend upon the actual authority of the party with whom they directly deal, but are derived from the act of the real principal in holding out such agent as being vested with authority to dispose of the property, and which act precludes the principal from disputing, as against innocent third parties, the existence of the authority which, through negligence or mistaken confidence, he has allowed to be vested in the agent with whom they are dealing. (*Hollywood Holding etc. Corp.* v. *Oswald,* 119 Cal.App. 21, 25 [5 P.2d 963].) To epitomize, it may be said that when an agent on behalf of his principal performs an unauthorized act, if the principal has put the agent in a position to mislead innocent parties, he is responsible to the latter.

In such cases as that here involved, it is true the agent has been negligent in the performance of his duties, and some innocent person must be the loser. Should it not be the one who gave the agent the power which he misused, intentionally or unintentionally?

It should be remembered that throughout this opinion we have followed the rule applicable to cases wherein the appeal is taken from a judgment following a nonsuit, which rule requires that the evidence shall be taken by the appellate tribunal in the light most favorable to the losing party in the court below. We are therefore expressing no opinion as to the weight of the evidence or its truth or falsity.

No other points raised demand our consideration.

The judgment is reversed and the cause remanded for a new trial.

Doran, J., and Drapeau, J., concurred.