[Civ. No. 47516. First Dist., Div. One. July 16, 1980.]

Estate of JEFFERSON PATTERSON, Deceased.
MARY MARVIN BRECKENRIDGE PATTERSON, as Co-executor, etc., et al., Petitioners and Respondents, v.
ROGER L. GREENBERG et al., Objectors and Appellants.

**COUNSEL**

Robert S. Epstein, Thomas M. Dillon, Williams, Van Hoesen, Brigham & Epstein, Steinhart, Goldberg, Feigenbaum & Ladar, John W. Sheehy, Jr., and Toni Pryor Wise for Objectors and Appellants.

Dinkelspiel & Dinkelspiel, John Walton Dinkelspiel, Bruce W. Belding and Jeffrey Kirchmann for Petitioners and Respondents.

**OPINION**

**GRODIN, J.—**

### STATEMENT OF THE CASE

This is an appeal from an order of the Probate Division of the San Francisco Superior Court confirming the sale of a medical office build-

ing located at 525 Spruce Street, San Francisco. The building was sold by the executors of the estate of Jefferson Patterson, deceased, to the former tenants (and present owners) of the building, who had leased it from the decedent several months before his death. Prior to the sale, the executors and the lessees had agreed upon a price of $410,000; but the trial court—over the lessees' objection—determined to receive public bids on the property, which raised the price to $530,000. In its order confirming the sale to the lessees at that higher price, the trial court deleted all reference to real estate brokerage commissions. On appeal, the lessees (who purchased the property) contend that the trial court erred in requesting public bids; and the brokerage firm (with which the executors had an exclusive listing agreement) contends that the trial court erred in failing to fix the amount of its fee.

We affirm the trial court's action in requesting public bids and reject lessees' contentions on appeal, but we remand as to the brokerage firm, with instructions to reconsider the order which confirmed the sale, solely for the purpose of fixing and allowing a reasonable broker's commission; and with further instructions to fix such a commission and to direct the executors to pay the commission so fixed.

STATEMENT OF FACTS AND PROCEDURE BELOW

In May 1977, Jefferson Patterson as lessor and a group of doctors and medical organizations—including appellants Roger L. Greenberg, M.D., Inc., and Yoel I. Haller, M.D., and Bernard Z. Gore, M.D., a professional corporation—as lessees entered into a written lease of certain real property located at 525 Spruce Street, San Francisco. A medical office building stands on the property. The term of the lease was just over ten years, from July 1, 1977, to August 31, 1987, subject to the lessees' option to renew the lease for two additional five-year periods.

The lease (with its addendum) is 24 pages long and was drafted by the attorneys for the lessor, who are the attorneys for the executors in this action. Paragraph 21 provides that the lease "is intended to and does bind" the executors and assigns of the parties. Of particular relevance to this appeal is paragraph 23, which provides in part: "If Lessor determines to sell said property during the term of this Lease..., Lessor shall notify Lessees of the terms on which Lessor will be willing to

sell. [¶] If Lessees, within 30 days after receipt of Lessor's notice, agree in writing to purchase the said property on the terms stated in said Lessor's notice, Lessor shall sell and convey the said property to Lessees and Lessees shall purchase said property from Lessor on the terms stated in said notice...."[1] According to the lessees, and without contradiction by the attorneys for the executors, paragraph 23 was "specifically negotiated between the parties and drafted pursuant to those negotiations" to protect the lessees' substantial ("in excess of $250,000") investment in improvements to the property. Other provisions of the lease expressly refer to "certain alterations, repairs, modifications, and remodeling" of the building, which it was contemplated that the lessees would undertake at their own expense. Rent was to be paid in San Francisco, care of appellant Hanford-Freund & Company.

Patterson died on November 12, 1977, while domiciled in Maryland. Shortly thereafter, his will was admitted to probate in Maryland; and his estate was estimated to be worth over $7 million. Respondent Mary Patterson was named in the will as the principal residuary legatee. Because decedent owned real property in San Francisco at the time of his death, a petition for probate was filed in the San Francisco Superior Court. (Prob. Code, §§ 360, 301, subd. (3).) The will was admitted to probate here on January 12, 1978, and respondents Mary Patterson and Charles T. Aker were appointed executors. According to an appraisal filed in the California ancillary proceedings, the property located at 525

---

[1]Paragraphs 21 and 23 of the lease provide: "21. Subject to the provisions hereof relating to assignment and subletting, this Lease is intended to and does bind the heirs, executors, administrators, successors and assigns of any and all of the parties hereto."

"23. If Lessor determines to sell said property during the term of this Lease or extensions thereto, Lessor shall notify Lessees of the terms on which Lessor will be willing to sell.

"If Lessees, within 30 days after receipt of Lessor's notice, agree in writing to purchase the said property on the terms stated in said Lessor's notice, Lessor shall sell and convey the said property to Lessees and Lessees shall purchase said property from Lessor on the terms stated in said notice and shall promptly make payment therefor of the purchase price set forth in said notice to Lessor. If Lessees do not agree in writing within said 30 days, Lessor shall thereafter have the right to sell and convey said property to a third party on the same terms and conditions stated in the aforesaid notice, provided however, that Lessor shall have the right and may agree to sell such property to such third party for a sales price of not less than 85% of the sales price offered to Lessees. In the event that Lessor does not sell said property to a third person within 180 days commencing from the expiration of the 30 days' notice given by Lessor to Lessees as above provided, any further transaction shall be deemed a new determination by Lessor to sell said property and the provisions of this paragraph shall be applicable."

Spruce Street was valued at $355,000 as of the date of decedent's death. The will authorized the executors to sell real property "without order of court" and "at such time and upon such terms as they may deem advisable,..."

In July 1978, having sought and obtained permission to do so from the San Francisco Superior Court (Prob. Code, § 760), the executors entered into an exclusive 90-day listing agreement with appellant Hanford-Freund & Company, a licensed California real estate broker, to secure a purchaser for the Spruce Street property and certain other realty. The agreement provided that if the property were sold during the 90-day term, a 5 percent commission would be paid to the broker from the proceeds of the sale, subject to court approval. The agreement also provided that the bid for the purchase of the property "shall be substantially in the form shown on Exhibit A attached hereto...." The attached bid form provided in part: "This sale is conditional upon confirmation of the above-entitled [San Francisco Superior] Court, and shall promptly be returned to that Court for confirmation,..."

Negotiations then ensued between the executors and the lessees. The court below found that the executors were determined to sell said real property and said executors notified lessees of the terms on which the estate would be willing to sell. Such terms were the sum of $410,000, all cash. Within 30 days after receipt of such notice, lessees agreed in writing to purchase the said property on the terms set forth in their $410,000 bid. The bid was submitted on a form containing the language quoted above, whereby the sale was made conditional upon confirmation by the court. The executors accepted the lessees' bid subject to confirmation of the court and agreed to pay the broker whatever sum may be allowed by the court for services in securing the purchaser. The broker agreed to the foregoing terms on September 13, 1978.

On October 2, 1978, the executors filed a petition pursuant to Probate Code section 785 requesting confirmation of the sale to the lessees and allowance of a commission to the broker. At the confirmation hearing on October 31, 1978, third parties attempted to bid on the property. Counsel for the executors informed the court of the existence of the lease and stated: "[This proceeding] should have been brought under Section 850 of the Probate Code...to compel the executors to carry out the terms of the lease.... I think under the terms of the lease...[the lessees] would have the right to accept the offer which we propose to

them and not subject themselves to a bid." The court on its own motion continued the matter so that the parties could submit briefs on the question of public bidding.

On November 7, 1978, the court—over the lessees' objections—invited public bids on the Spruce Street property, subject to the condition that the lessees would have 30 days (or until Dec. 6, 1978) to purchase the property on the same terms and conditions as might be offered by a public bidder. Bidding then proceeded in open court with the understanding that the lessees would have 30 days to match the highest bid. A price of $530,000 was bid by a third party, that price was confirmed by the court, and the hearing was continued until December 6.

Between November 7 and December 6, 1978, the lessees and the executors agreed that the amount of money (viz. $120,000) by which public bidding had increased the purchase price of the property would be held in trust by the executors pending this court's decision as to whether the trial court erred in receiving public bids.[2] On December 6, 1978, the lessees agreed in writing to purchase the property for $530,000; and the trial court confirmed the sale to the lessees at that price, without prejudice to their right to challenge the propriety of the public bidding.

At the conclusion of the confirmation hearings, the attorneys for the executors submitted a proposed form of written order confirming the sale, which recited that Hanford-Freund & Company had procured the purchasers of the property and that $18,000 was a reasonable amount to be allowed as its commission.[3] Before signing this proposed order, the trial judge deleted all references to Hanford-Freund and its commission. The judge signed the order as so modified. There is no express indication in the record as to why the deletions were made. The order was filed on December 12, 1978, and was entered on December 14, 1978. Hanford-Freund and the lessees argue that the trial court's order is appealable under Probate Code section 1240 as an order "directing or authorizing the sale or conveyance or confirming the sale of property."

---

[2]The record on appeal was augmented by order of this court dated October 17, 1979, to include a copy of the letter memorandum of this agreement.

[3]The $18,000 figure squares with the amount required by schedule contained in section 10.08 of the San Francisco Probate Manual. For comparison, 5 percent of $530,000 is $26,500.

## DISCUSSION

### 1. *The trial court did not err in requiring and receiving public bids.*

The lessees argue on what appear to be alternative grounds that the sale of the Spruce Street property should have been confirmed to them for $410,000. First, the lessees submit that paragraph 23 of the lease is specifically enforceable, so that the sale should have been confirmed under section 850 of the Probate Code, without public bidding, rather than under section 785,[4] as actually occurred. Second, the lessees contend that the sales transaction should be governed by Maryland law, so that under the circumstances of this case, public bidding was inappropriate.

### a. *The specific performance theory.*

Probate Code section 850 provides: "If a person who is bound by contract in writing to convey any real property or to transfer any personal property dies before making conveyance or transfer, and the decedent, if living, might have been compelled to make such conveyance or transfer, or if a person binds himself or his executor or administrator by contract in writing to convey any real property or to transfer any personal property upon or after his death, and the contract is one which can be specifically enforced, the court in which proceedings are pending

---

[4]Probate Code section 785, concerning the confirmation of private sales of real property, provides in relevant part: "Upon the hearing the court must examine into the necessity for the sale, or the advantage, benefit and interest of the estate in having the sale made, and the efforts of the executor or administrator to expose the property to the market, and must examine the return and witnesses in relation to the sale; and if it appears to the court that good reason existed for the sale, that the sale was legally made and fairly conducted, and complied with the requirements of the previous section, that the sum bid is not disproportionate to the value, and it does not appear that a sum exceeding such bid at least 10 percent on the first ten thousand dollars ($10,000) bid and 5 percent on the amount of the bid in excess of ten thousand dollars ($10,000), exclusive of the expenses of a new sale, may be obtained, the court shall make an order confirming the sale and directing conveyances to be executed; otherwise it shall vacate the sale and direct another to be had, of which notice must be given and the sale in all respects conducted as if no previous sale had taken place. But if a written offer in an amount at least 10 percent more on the first ten thousand dollars ($10,000) bid and 5 percent more on the amount of the bid in excess of ten thousand dollars ($10,000) is made to the court by a responsible person, and the offer complies with all provisions of the law, the court shall accept such higher offer, confirm the sale to such person and fix a reasonable compensation for the services to the estate of the agent, if any, producing the successful bidder, or, in its discretion, order a new sale."

for the administration of the estate of the decedent may make a decree authorizing and directing the executor or administrator to convey or transfer the property to the person entitled thereto."

■ Appellants seek to conform their claim to the contours of section 850 by the following reasoning: paragraph 23 of their lease conferred upon them the option to purchase the property at a price named by the lessor as a result of "private" negotiations; the lessor (had he survived) would have been precluded from "marketing" the property to the general public; and since the lease expressly bound the lessor's executors they, too, were subject to that limitation. Therefore, as soon as the executors named a price appellants had a right to purchase the property at the price named, and that right was specifically enforceable within the meaning of section 850.

We have some difficulty reading the lease provision as appellants would have us read it,[5] and we note authority to the effect that section 850 is available only where the right to specific performance is clear (*Estate of Roche* (1962) 202 Cal.App.2d 295, 298 [20 Cal.Rptr. 775]), but leaving those problems aside there is a greater obstacle to appellants' theory: California law simply does not permit an executor to exercise the kind of unrestrained authority which appellants claim was conferred upon these executors by their lease.

The correct analysis of the applicable principles is contained in *Estate of Quackenbush* (1975) 53 Cal.App.3d 751 [125 Cal.Rptr. 832]. In that case, the decedent during her lifetime had executed a lease (as lessor) which contained the following provision: "'In the event of a contemplated sale of the premises during the demised term, Lessor agrees to give Lessee a notice in writing, at least ten (10) days from the contemplated sale, of substance of terms on which it is proposed to be made...thereupon, within ten days from the receipt of such notice, the Lessee shall have the right to purchase the premises upon the terms and conditions proposed....'" (*Id.*, at pp. 753-754.) After she died, her ex-

---

[5]Paragraph 23 of the lease provides only that the lessor is to notify the lessees "of the terms on which Lessor will be willing to sell"; it does not on its face preclude the lessor from soliciting offers from others in order to determine the appropriate price. Appellants rely, however, upon a statement made in open court by an attorney for the executors to the effect that "under the terms of the lease...[the lessees] would have the right to accept the offer which [the executors] propose to them and not subject themselves to a bid." That attorney participated in drafting the lease on behalf of the testator, and for purposes of this opinion we accept that interpretation.

ecutors notified the lessees that they contemplated sale of the property for $65,000, subject to "'confirmation of the court'"; and the lessees elected, in accordance with the lease provision, to purchase on those terms. (*Id.*, at p. 754.)

The executors in *Quackenbush* then filed a return in the probate court and petitioned under Probate Code section 785 for confirmation of the sale. The lessees filed a petition under Probate Code section 850 for a decree directing conveyance of the property to them for $65,000. The probate court denied the lessees' petition and, at the confirmation hearing, received a high bid of $68,750 from a third party. The court then continued the hearing for 10 days, in recognition of the first refusal provision in the lease, to give the lessees an opportunity to meet the higher bid. The lessees declined to do so, and the trial court confirmed the sale to the third party who had submitted the high bid. (53 Cal. App.3d at p. 754.)

As do the lessees here, the lessees in *Quackenbush* contended on appeal "that the statutory procedure for confirmation of sale of real property, specifically the invitation of higher bids in open court, violated their contractual rights...[and that] they were entitled to a decree specifically enforcing decedent's contract." (53 Cal.App.3d at p. 754.) We join the *Quackenbush* court in rejecting those arguments.

After a lessor's death, an executor lacks the power to bind the estate by his or her acceptance of a bid by any party without confirmation by the probate court. (*Richfield Oil* v. *Security-First Nat. Bank* (1958) 159 Cal.App.2d 184, 189 [323 P.2d 834].) The public policy implications of this statutory scheme are clear, for as the *Quackenbush* court stated: "The estate of a decedent passes into the custody of the state to be managed until creditors are paid and the rights of devisees and heirs determined. [Citation.] The manifest purpose of the statutory procedure for return and confirmation of private sales of real property is to protect the decedent's estate from abuse of executorial discretion. The instant transaction involved the exercise of considerable discretion by the executors for they alone had determined the terms of the proposed sale. To hold the confirmation procedure inapplicable would frustrate the clear purpose of the statutory arrangement." (53 Cal.App.3d at pp. 755-756.)

Appellants seek to distinguish *Quackenbush* on the ground that their lease provided more than a right of first refusal, but the distinction is

irrelevant to the policy considerations which underlie the *Quackenbush* rationale. And appellants' reliance upon *Bewick* v. *Mecham* (1945) 26 Cal.2d 92 [156 P.2d 757, 157 A.L.R. 1277], is misplaced, since that case involved a contract to convey property at a determined price. We conclude that as a matter of California law the trial court was correct in concluding that section 785 controlled.

b. *The Maryland law theory.*

Appellants assert, as an alternative theory in support of the lease provision as they interpret it, that the provision is valid under the law of the State of Maryland,[6] and that Maryland law should control. They point to the fact that according to the list of legatees filed in probate, none of the residuary legatees are residents of California, and they assert that the estate is substantial enough to satisfy the specific bequests in the will and to provide a substantial residuary estate. Therefore, they reason, California has no substantial reason to impose its probate procedures to defeat the intent of the contracting parties. (*Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719]; *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574 [114 Cal.Rptr. 106, 522 P.2d 666].)

Appellants assert this theory for the first time on appeal, and for that reason alone it deserves rejection. ■ "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant *timely* invokes the law of a foreign state." (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d at p. 581, italics added.)[7] ■ Moreover, even if we were to assume that the new theory involves purely a question of law[8] and that it would otherwise be appropriate for us to consider it on the merits[9] we

[6]Annotated Code of Maryland, Estates and Trusts section 7-401(a), provides in part that a personal representative may exercise "all of the power or authority conferred upon him by statute or in the will, without application to, the approval of, or ratification by the court." Appellants assert that if the sale had occurred in Maryland, respondents would have been empowered under Maryland law to sell the property and they would have been required under the terms of the lease to negotiate "privately" with appellants. Respondents do not dispute these assertions.

[7]See Evidence Code sections 311, subdivision (a), 452, subdivision (a), 453, 459, subdivision (a); and see Schlesinger, *A Recurrent Problem in Transnational Litigation: The Effect of Failure to Invoke or Prove the Applicable Foreign Law* (1973) 59 Cornell L.Rev. 1, 5, 11-16, 21-23.

[8]See Schlesinger, *supra,* 59 Cornell L.Rev. at pages 3-5.

[9]See Evidence Code section 459, subdivision (a); *Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; cf. Schlesinger, *supra,* 59 Cornell L.Rev. at pages 21-23.

would not be prepared to accept it. Civil Code section 755 expressly provides that "Real property within this State is governed by the laws of this State, except where the title is in the United States." The interest analysis approach to tort conflicts questions adopted by the Supreme Court in *Hurtado*, and applied in *Bernhard*, has questionable application in this context.[10] In any event, California's interest in requiring local administration of real property located in this state is not limited to the protection of heirs, but extends also to protecting the rights of creditors and properly transmitting the title of record. (*Estate of Strong* (1898) 119 Cal. 663, 666 [51 P. 1078].)[11] We conclude that the trial court did not err in requiring and receiving public bids.

2. *The trial court erred in failing to fix a brokerage commission.*

■    Appellant Hanford-Freund & Company contends that it was entitled to reasonable compensation for its services upon confirmation of the sale to the lessees and that the court below was required by law to fix the amount of its commission.

Probate Code section 760 provides in pertinent part: "The executor . . . may enter into a written contract with any bona fide . . . broker . . . to secure a purchaser for any real . . . property of the estate, which contract may provide for the payment of a commission out of the proceeds of the sale. [¶] Such contract may additionally grant an exclusive right to sell property. . . . [¶] When said sale is confirmed to such purchaser, *such contract shall be binding and valid as against the estate* for an amount to be allowed by the court. . . ." (Italics added.) Hanford-Freund and the executors entered into such a contract with the permission of the court below. The contract provided that if the Spruce Street property were sold during the term of the agreement, a 5 percent commission would be paid to the broker from the proceeds of the sale, subject to allowance by the court. Hanford-Freund submits that the agreement

---

[10]Compare Hancock, *Conceptual Devices for Avoiding the Land Taboo in Conflict of Laws: The Disadvantages of Disingenuousness* (1967) 20 Stanford L.Rev. 1; Kanowitz, *Comparative Impairment and Better Law: Grand Illusions in the Conflict of Laws* (1978) 30 Hastings L.J. 255, 277, 297-299; and Restatement Second of Conflict of Laws section 223, comments b and c.

[11]Constitutional limitations are mentioned by Hancock, *Full Faith and Credit to Foreign Laws and Judgments in Real Property Litigation: The Supreme Court and the Land Taboo* (1966) 18 Stanford L.Rev. 1299, 1300 at footnote 6; and see Schlesinger, *supra*, 59 Cornell L.Rev. at page 19, footnote 99.

became valid and binding on the parties when its terms were satisfied. Upon confirmation of the sale, then, Hanford-Freund & Company asserts an entitlement to a commission, and argues that the amount of that commission should have been fixed by the court at that time, citing *Estate of Williamson* (1957) 150 Cal.App.2d 334 [310 P.2d 77], and 2 Goddard, Probate Court Practice (3d ed. 1977) Commissions to Real Estate Brokers, section 1062, pages 125-129.

Hanford-Freund also relies on Probate Code section 785, which provides that upon confirmation of the sale of real property pursuant to the increased bidding procedure, "the court *shall*...fix a reasonable compensation for the services to the estate of the agent, if any, producing the successful bidder...." (Italics added.) Hanford-Freund contends that deletion of all reference to the commission effectively resulted in no finding or order whatsoever as to commissions. Failure to make such a finding violates both the clear mandate of Probate Code section 785 and the terms of the binding listing agreement.

The executors' response that the probate court's deletion of any reference to allowance of a broker's commission was based on an implied finding that confirmation of the sale to purchasers under a contractual right of first refusal was not confirmation of sale to a purchaser "secured" by Hanford-Freund within the meaning of Probate Code section 760, or to a successful bidder "produced" by Hanford-Freund within the meaning of Probate Code section 785, seems unlikely. Hanford-Freund held an exclusive listing agreement with the executors at the time the lessees' initial $410,000 bid was accepted; and the executors in their acceptance of that bid acknowledged Hanford-Freund's right to receive a commission for services in securing the purchaser. A representative of Hanford-Freund, moreover, was present and acting on the lessees' behalf at the initial confirmation proceedings. This court has construed rather broadly, so as to give effect to the intentions of the parties, those provisions of Probate Code section 760 which authorize payment of a broker's commission from the proceeds of a confirmed sale. (See *Estate of Williamson, supra,* 150 Cal.App.2d 334, 344.) The parties to the sale in the case at bar obviously contemplated that Hanford-Freund would receive a fee.

On the present record, because no findings were made concerning Hanford-Freund's commission, there is no way of knowing what the trial court may have had in mind when the deletions were made. On this

appeal, Hanford-Freund makes no reference to its previous objection, mentioned above, and requests that this court either reinstate the provisions authorizing payment of the *$18,000* commission or remand with instructions to enter an order authorizing such payment. The executors suggest that if this court should decide as a matter of law on the existing record that Hanford-Freund is entitled to receive a commission, then the matter might most appropriately be remanded for determination *in accordance with the local probate rules*, of the particular amount to be allowed. Under the facts of the matter, the most appropriate course is simply to fix and then to allow a reasonable fee.

### CONCLUSION

Accordingly, we affirm the trial court's order in requesting public bids and reject lessees' arguments on appeal, but we remand the cause for redetermination, in a manner consistent with this opinion, of Hanford-Freund's entitlement to a commission and the amount thereof.

It is so ordered. Respondent Patterson et al., and appellant Greenberg et al., each to bear their own costs on appeal. Appellant Hanford-Freund & Company to recover its costs on appeal from respondent Patterson.

Racanelli, P. J., and Elkington, J., concurred.