[No. A014853. First Dist., Div. One. Nov. 21, 1984.]

PAUL DANZIG et al., Plaintiffs and Respondents, v.
JACK GRYNBERG & ASSOCIATES et al., Defendants and Appellants.

1132

**Counsel**

Jon Wallace Upton, Kimble, MacMichael, Jackson & Upton, Jerome I. Braun, Deborah A. Schaefer, Farella, Braun & Martel, Rodney R. Patula, Pryor, Carney & Johnson, Jeffrey L. Beattie, William D. Scheid, William G. Horlbeck, Law & Scheid, Scheid & Horlbeck, Ernest W. Lohf, Neil E. Ayervais and Lohf & Barnhill for Defendants and Appellants.

Sandra J. Shapiro and Bancroft, Avery & McAlister for Plaintiffs and Respondents.

Opinion

**RACANELLI, P. J.**—This appeal is taken by defendants Jack J. Grynberg, doing business as Jack Grynberg & Associates, and his wife Celeste Grynberg, from a judgment rendered by the court (sitting without a jury) in favor of plaintiffs individually and as class representatives of all limited partner investors in an oil and gas limited partnership known as the "Greater Green River Basin Drilling Program 72-73" (hereafter GGRB).[1] Following an extended trial the court entered its judgment in favor of plaintiff class on a theory of rescission grounded upon findings of fraudulent misrepresentations and nondisclosures in inducing the members of plaintiff class to subscribe to limited partnership interests in, and to contribute working capital to, the GGRB partnership venture. The judgment provided, inter alia, for restitution to the class in the total sum of approximately $4.1 million and compensatory damages in the total sum of $2.2 million together with punitive damages against defendant Jack Grynberg only in the total sum of $431,000, the punitive award to be apportioned among the class members in accordance with their prorated interests.

On appeal defendants attack the validity of the class certification and resulting judgment, the sufficiency of the evidence in support of the findings and the award of damages. Celeste Grynberg separately raises a jurisdictional challenge to the judgment against her. For the reasons which we explain, we conclude that no reversible error is shown and accordingly affirm the judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

The underlying action arose from a 1972 public offering by defendant Grynberg of limited partnership interests in GGRB, in which Grynberg was designated as the sole general partner. The partnership purpose was to explore for oil and gas drilling prospects and potential production in the Greater Green River Basin of Colorado, Utah and Wyoming upon oil and gas leases held either by Grynberg or his wife Celeste Grynberg. Through an active solicitation program conducted in over a dozen states, Grynberg sold the eventual $4 million registered offering to approximately 55 limited partner investors in subscription units of $200,000 each, or fractions thereof. The largest number of investors, including the named plaintiffs, were California residents. The principal sales tool was the written prospectus which was amended several times during the course of the public offering. The

---

[1]Although the Grynbergs have filed separate appeals, Celeste Grynberg concedes that most of the issues raised in Jack J. Grynberg's appeal are common issues which she adopts by reference. Except as otherwise indicated, our discussion relates to both appeals.

original or preliminary prospectus provided that in consideration for a 50 percent interest, the general partner (Grynberg) "shall commit" certain oil and gas leases to some 200,000 acres in the basin and other areas; in response to an official SEC inquiry as to the meaning of the word "commit," the prospectus was amended to provide that approximately 202,000 net acres in the tri-state area held under leases owned by the Grynbergs would not be used by the general partner for his own account but Grynberg "shall make them available to the Partnership" for inclusion within drillable prospect areas. Identical language was contained in the next four versions of the revised prospectus. Two of the revised documents were accompanied by written summary sheets outlining key features of the proposal together with page references to the prospectus itself. The summary sheets repeated the language contained in the earlier versions of the prospectus concerning commitment of leases.[2]

The partnership commenced actual operations on December 1, 1972. On December 21, 1972, the Grynbergs transmitted a letter to the limited partners which purported to assign to the partnership their interests in the oil and gas leases. However, the Grynbergs' recorded assignments of the leases, unknown to the limited partners, specified a right of reversion upon termination of the partnership: December 31, 1974, or whenever the capital contributions were exhausted, whichever first occurred.

By the summer of 1974 the partnership operating capital was virtually expended. At about the same time, Grynberg obtained an amendment to the partnership agreement to permit additional contributions by the limited partners in conjunction with the Kent Ranch drilling project. Thereafter he solicited and obtained approximately $400,000 in "voluntary contributions" from some of the investors. The Kent Ranch well was eventually abandoned.

In 1975 the named plaintiffs filed the underlying suit individually and on behalf of all of the limited partners of GGRB.[3] Following a hearing plain-

---

[2] Each prospectus, seven in total, consisting of nearly one hundred pages of single-spaced print, was identical in appearance and format. Although those subsequently circulated bore the label "amendment no. —," no covering letter or memorandum was provided explaining or otherwise indicating the nature of the amendments. The summary sheets included with the fifth and seventh prospectuses (Post-Effective Amendments Nos. 1 and 3) declared: "12. AMOUNT OF ACREAGE COMMITTED TO THE PARTNERSHIP BY GENERAL PARTNER: (Ref. p. 18) [¶] Approximately 200,000 gross acres (principally in the Greater Green River Basin)."

[3] The first four causes of action focused on the 1974 partnership amendment (permitting the general partner to obtain voluntary contributions to finance the Kent Ranch prospect) and alleged in substance: 1) that the solicitation violated the partnership agreement by diluting the pro rata interests; 2) that Grynberg fraudulently obtained the favorable votes; and 3) that the additional contributions were personally retained by Grynberg. The fifth and sixth causes concerned the status of the oil and gas leases: the former for declaratory relief and

tiffs' action was certified as a class action, and notice was sent to all limited partners. None opted out of the lawsuit.

At the pretrial conference held in 1979 plaintiffs were permitted to amend their complaint to seek rescission and restitution on an alternative theory (in the event the subject leases were not distributable assets of the partnership) that the plaintiff class had been detrimentally misled by the material representations contained in the amended versions of the prospectus and summary sheets. Following the overruling of defendants' demurrer, trial commenced on the issues framed in the complaint as amended. After submission of the cause, the court filed its notice of intended decision granting relief to plaintiff class in the form of rescission and restitution of their net capital contributions together with accrued interest and punitive damages against Jack Grynberg alone, assessed on the basis of 10 percent of each contribution.

The common thread running through the court's extensive findings in support of rescission and damages was the fraudulent misrepresentations and nondisclosures of Grynberg with respect to the summary sheets' characterization that the leases would be committed as partnership assets, and the related failure to reveal to plaintiff class that the leases which were not drilled would revert to the Grynbergs upon termination and dissolution of the partnership; that such misrepresentations and nondisclosures were intentional and willful in order to induce the plaintiff class to subscribe to partnership interests. Moreover, the court explicitly found that the members of plaintiff class reasonably and justifiably relied upon such misrepresentations and nondisclosures in purchasing their respective partnership interests; that but for such fraudulent conduct the members of plaintiff class would not have subscribed to the limited partnership offering as paid investors.

In determining that plaintiff class was entitled to rescission, compensatory and punitive damages, the court also ordered restoration of the leases, producing wells and other partnership assets to the Grynbergs together with certain enumerated compensating offsets.

## I. *Class Certification*

■ Grynberg first argues that once the complaint was amended changing its focus from one of enforcement of the partnership agreement to that of avoidance based upon allegations of common law fraud implicating conflict-of-law issues, the original class certification was vitiated and a class

the latter for an accounting on theories of fiduciary breach. The seventh cause of action alleged a breach of fiduciary duty based on mismanagement and lack of good faith in conducting drilling activities.

judgment was improper. Plaintiff class responds that Grynberg's failure to move timely to decertify the class certification after the complaint was amended constituted a waiver of any objections to such certification. We agree.

The thrust of Grynberg's challenge to the class judgment is directed at the alleged lack of community of interest of the diverse members of the class. The claim comes too late. The proper time to challenge the procedural propriety of a class action is *before* proceedings have been undertaken on the merits; judicial review, if necessary, is available by extraordinary writ. (*Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 387, fn. 4 [134 Cal.Rptr. 393, 556 P.2d 755].)

California decisions uniformly hold that the propriety of a class action must be decided at the earliest possible stage. (*Home Sav. & Loan Assn.* v. *Superior Court* (1974) 42 Cal.App.3d 1006, 1010 [117 Cal.Rptr. 485] [error to bifurcate trial to decide liability first]; *Massey* v. *Bank of America* (1976) 56 Cal.App.3d 29, 32 [128 Cal.Rptr. 144] [dismissal sanction proper for delay in determining propriety of class action].) ■ That determination may be made either on motion of a party or by the court *sua sponte*. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 453-454 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R. 1223].) Once the initial determination has been made, a motion to decertify the class action may be used whenever changed circumstances render class status no longer appropriate. (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 360 [134 Cal.Rptr. 388, 556 P.2d 750].) But a request for decertification must be made before a decision on the merits. (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 145-149 [172 Cal.Rptr. 206, 624 P.2d 256].)

Herein, Grynberg registered no formal objections to the initial certification of the class. Indeed, he conceded that the action may be a "proper class action" while expressing concern only that divergent views within the class be represented. Nor did he move to decertify the class after the amendment to the complaint seeking rescission.

■ ■■■ Grynberg's challenge to the class certification was raised for the first time in his objections to the proposed findings of fact.[4] ■ His argument that the objections were timely since formal *judgment* had not yet been entered is unpersuasive. The very purpose in requiring pretrial

---

[4]Although Grynberg pleaded lack of community interest as an affirmative defense in his answer to the amended complaint filed on the first day of trial, the issue thus joined for trial did not constitute a demand for decertification prior to a decision on the merits. (Cf. *Employment Development Dept.* v. *Superior Court* (1981) 30 Cal.3d 256, 262-264 [178 Cal.Rptr. 612, 636 P.2d 575].)

determination of class issues is to avoid precisely what happened here: passive acquiescence to class certification awaiting results of trial, and if unfavorable, a belated attack on the class certification order as improper. (*Civil Service Employees Ins. Co.* v. *Superior Court* (1978) 22 Cal.3d 362, 373-374 [149 Cal.Rptr. 360, 584 P.2d 497] [objections to class certification after granting of partial summary judgment untimely]; *Green* v. *Obledo, supra,* 29 Cal.3d at pp. 147-149 [same: motion to decertify after partial summary judgment].) We conclude that Grynberg's failure to move timely to decertify or recertify the class effectively waived any objections to the class certification based on a claim of changed circumstances. (Cf. *Civil Service Employees Ins. Co.* v. *Superior Court, supra,* 22 Cal.3d at pp. 372-373.) ▉ ▉▉ ▉▉▉ ▉▉ In view of our determination, it becomes unnecessary to discuss Grynberg's related due process and notice arguments.[5]

## II. *Sufficiency of Evidence*

▉▉ While mindful of the general principles governing review of a claim of insufficient evidence (*Munoz* v. *Olin* (1979) 24 Cal.3d 629, 635-636 [156 Cal.Rptr. 727, 596 P.2d 1143]; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]), Grynberg contends that as a matter of law there was no competent evidence of justifiable reliance or fraudulent inducement. Our review of the record under applicable principles compels a contrary conclusion.

Grynberg's claim of unjustified reliance is based largely, if not exclusively, on the disclaimer language contained in the subscription agreement form signed by each of the limited partners.[6]

---

[5]Parenthetically, we think Grynberg's contention that disparate, but nonexclusive, oral representations preclude class proof is meritless. In *Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d 355, a virtually identical argument was rejected where, as here, written representations common to the class were made. (*Id.,* at p. 361.) Nor does his companion claim of differing state laws governing fraud suggest a contrary determination where, as here, such theory is urged for the first time on appeal (*Estate of Patterson* (1980) 108 Cal.App.3d 197, 207 [166 Cal.Rptr. 435]); unless a party timely invokes the law of a foreign state, the law of the forum will apply. (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 581 [114 Cal.Rptr. 106, 522 P.2d 666].) Finally, we discern no prejudice to Grynberg by reason of the failure to provide notice to the class of the amendment seeking the different *remedy* of rescission. Since plaintiff class received adequate notice of the original complaint alleging the same ultimate factual averments underlying the rescission theory of relief, separate lawsuits by individual members could not be successfully maintained. In any case, since the judgment was returned in favor of plaintiff class, none of whose members earlier chose to opt out, the error—if any—in failing to provide additional notice, was clearly harmless.

[6]The operative language states that the signatory limited partner acknowledges that he is "not acting on the basis of any representation or warranties other than those contained in the aforementioned Prospectus [dated September 15, 1972]."

██ It is well established that a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind, notwithstanding the existence of purported exculpatory provisions contained in the agreement. (*City of Salinas* v. *Souza & McCue Construction Co.* (1967) 66 Cal.2d 217, 223-224 [57 Cal.Rptr. 337, 424 P.2d 921].) The rule of nonimmunity has been stated by a leading commentator in the following language: "A party to a contract who has been guilty of fraud in its inducement cannot absolve himself from the effects of his fraud by any stipulation in the contract, either that no representations have been made, or that any right which might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision." (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 326, p. 274.) ██ Although the trial court found that each member of plaintiff class reasonably believed the statements contained in the subscription agreement were true, it also found that the language contained in the several prospectuses was unclear and confusing and that the solicited class members were then unaware of the material language changes or "true facts concerning the status of the leases" and Grynberg's related intent; further, that under such circumstances the class members reasonably and justifiably relied on the written summary sheets which purported to explain material changes in the partnership proposal. The reasonableness of that reliance presented a question of fact. (*City of Salinas* v. *Souza & McCue Construction Co.*, *supra*, 66 Cal.2d at p. 224; *Winn* v. *McCulloch Corp.* (1976) 60 Cal.App.3d 663, 671 [131 Cal.Rptr. 597].) ██ ██ ██ ██ ██ ██ When such findings are supported by substantial evidence, as here shown, they are binding on appeal.[7]

██ Grynberg's remaining claim of an evidentiary void in support of the findings of fraudulent inducement of the absent class members suffers from a similar analytical defect.

Addressing a similar argument of the necessity for independent proof of individual reliance of all class members, our highest court has consistently held if the trial court finds material misrepresentations were made to class members, "at least an inference of reliance would arise as to the entire class." (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 814 [94 Cal.Rptr.

---

[7]We reject Grynberg's related contention that the failure of the plaintiff class members to read the amended prospectuses, appropriately referenced in the summaries, amounts to unreasonable reliance as a matter of law. As noted, the issue is a factual one. The argument conveniently overlooks the court's explicit finding that the failure to read the prolix provisions of the several prospectuses was induced by Grynberg's active concealment of the *material* changes and his persistent use of the deceptive term "commit" in the written summary sheets. When such failure has been fraudulently induced, as here found, relief by way of rescission is amply justified. (Witkin, *op. cit. supra*, § 323, pp. 271-272.)

796, 484 P.2d 964, 53 A.L.R.3d 513]; *Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 363.) Indeed, this court reached the very same conclusion during its earlier interlocutory review of a discovery issue in *Danzig* v. *Superior Court* (1978) 87 Cal.App.3d 604, 613 [151 Cal.Rptr. 185]. The evidence and supporting inferences which may be drawn sustain the trial court's express findings of justifiable reliance on the common fraudulent misrepresentations and nondisclosures inducing the purchase of the limited partnership interests.

### III. *Damages*

Grynberg presents two claims of error regarding the award of damages.

■ He first argues that the trial court erred in applying California law as to the measure of damages to nonresident class members instead of the law of each state of residence. As earlier noted, it is the general rule that the law of the forum state applies unless a party litigant makes a *timely* request to invoke the law of a foreign state. (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d 574, 581.) Here, Grynberg at no time requested that the law of the state of each class member be applied. A request made for the first time on appeal is untimely, and any objection to the choice of law is deemed waived. (*Estate of Patterson, supra,* 108 Cal.App.3d 197, 207.)

■ Second, relying on *Austin* v. *Loftsgaarden* (8th Cir. 1982) 675 F.2d 168, Grynberg argues that the restitution damages should have been reduced by the tax benefits enjoyed by plaintiff class in the form of write-offs. In his supplemental letter of August 8, 1984, however, Grynberg candidly acknowledges that *Austin* has been disapproved in the recent decision of *Burgess* v. *Premier Corp.* (9th Cir. 1984) 727 F.2d 826, 838, which reasoned that the suggested offset allowance would result in "the government bearing the cost of defendants' fraud. . . [concluding] that the economic benefit by way of tax deductions is illusory because amended returns will have to be filed under the tax benefit rule. [Citation.]" (See also *Cereal Byproducts Company* v. *Hall* (1958) 16 Ill.App.2d 79 [147 N.E.2d 383, 384] affd., 15 Ill.2d 313 [155 N.E.2d 14] [credit for tax refund disallowed in action against auditor for negligent failure to discover embezzlements].)

Although we have found no California cases squarely on point, we are persuaded that the *Burgess-Hall* rule, that tax consequences are irrelevant to the recovery of damages, is better reasoned. (Cf. *Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 665-668 [151 Cal.Rptr. 399] [income tax consequence of lost income in personal injury action irrelevant]; *Canavin* v. *Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 522-523 [196 Cal.Rptr. 82] [same]; *City of Los Angeles* v. *Tilem*

(1983) 142 Cal.App.3d 694, 707-708 [191 Cal.Rptr. 229] [tax benefits to property owner from inverse condemnation award irrelevant]; *Henninger* v. *Southern Pacific Co.* (1967) 250 Cal.App.2d 872, 878-879 [tax exemption of personal injury award irrelevant].)[8]

We conclude that the tax benefits, if any, enjoyed by plaintiff class members as a result of their partnership investments are irrelevant to the restitution award of damages.

### Appeal of Celeste Grynberg Only

Defendant Celeste Grynberg challenges the validity of the judgment against her on the additional grounds of lack of personal jurisdiction, absence of evidence of culpable fraud and denial of procedural due process. We discuss the separate contentions in the order presented.

The original complaint naming Celeste Grynberg as a party defendant was served upon her by mail at her Colorado residence. Following denial of her motion to quash service of summons, she filed a petition for mandamus relief which this court summarily denied. (1 Civ. 37310.) Thereafter, Celeste Grynberg made a general appearance by filing an answer to the original complaint, followed by her answer to the amended complaint, and proceeded to trial on the merits.

At the close of plaintiff's case in chief, the trial court granted Celeste Grynberg's motion for judgment limited to the issue of punitive damages. (See Code Civ. Proc., § 631.8.) At close of trial the court expressly found that Grynberg had at all relevant times acted as the agent of Celeste Grynberg with her knowledge and permission; and that Celeste Grynberg had ratified such agency by executing lease assignments to the partnership and accepting the benefits therefrom. The court thereafter entered its judgment holding all of the named "defendants," which included Celeste Grynberg, jointly and severally liable for compensatory damages. In February 1981 the court granted plaintiffs' motion pursuant to Code of Civil Procedure section 662 to modify the judgment nunc pro tunc clarifying Celeste Grynberg's joint and several liability for compensatory damages.

---

[8]*Froid* v. *Fox* (1982) 132 Cal.App.3d 832 [183 Cal.Rptr. 461], cited by Grynberg, is readily distinguishable. That case involved an action by defrauded realty investors seeking recovery from the statutorily created Real Estate Education, Research and Recovery Fund, permitting reimbursement of an "actual and direct loss." In considering tax benefits occasioned by the investment losses, the court characterized the action as one for indemnification and distinguished the factual situation presented by an ordinary fraud action for damages. (*Id.*, at pp. 838-839.)

■ Celeste Grynberg's jurisdictional attack based upon the absence of "minimum contacts" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]) need only be briefly discussed in view of her failure to preserve such objection for review. Once she entered a general appearance by answering the complaint and thereafter proceeded to trial on the merits, she effectively waived any jurisdictional objection and cannot now assert the objection on appeal. (*McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252, 257-258 [74 Cal.Rptr. 389, 449 P.2d 453].)[9]

■ Nor is there any merit in the contention of insufficient evidence to support the fraud judgment against her for compensatory damages. Liability was fastened solely upon findings of agency between Celeste Grynberg and her husband. Grynberg himself testified that he managed her leases with her knowledge and regularly discussed the business transactions concerning said leases with her. Moreover, the prospectus itself specifically stated that the leases of Celeste Grynberg would also be committed to the partnership. Finally, Celeste Grynberg also executed the lease assignments to the partnership and participated in the economic benefits derived from the lease rentals and cost reimbursements for unproductive drilling prospects. Such evidence constituted substantial evidence in support of the critical findings and must be respected on appeal. (*Nestle* v. *City of Santa Monica, supra,* 6 Cal.3d 920.) It is of no legal significance that Celeste Grynberg herself did not actively participate in the fraudulent activities of Jack Grynberg concerning the leases since even an innocent principal will be held liable for the unauthorized acts of an agent acting on his behalf. (See, e.g., *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158, 174 [169 Cal.Rptr. 136]; *Spahn* v. *Guild Industries Corp.* (1979) 94 Cal.App.3d 143, 156 [156 Cal.Rptr. 375]; *Blackburn* v. *Witter* (1962) 201 Cal.App.2d 518, 520-522 [19 Cal.Rptr. 842]; *Eamoe* v. *Big Bear Land & Water Co.* (1950) 98 Cal.App.2d 370, 372-374 [220 P.2d 408]; *Grigsby* v. *Hagler* (1938) 25 Cal.App.2d 714 [78 P.2d 444]; see generally 1 Witkin, Summary of Cal. Law, *op.cit. supra,* Agency and Employment, §§ 177-180, pp. 775-777.)

■ Finally, we conclude that no due process violation occurred as claimed. The basis of that claim consists solely of the court's remarks that it saw no "basis" to order judgment against Celeste Grynberg in view of the absence of any evidence of *active* participation in Grynberg's fraudulent conduct. The language upon which Celeste now seizes occurred during the colloquy between court and counsel relating to the issue of liability sur-

---

[9]In view of our determination, it is unnecessary to examine plaintiffs' related jurisdictional defense based on a theory of purposeful intrastate economic activities (see *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57]; cf. *Ratcliffe* v. *Pedersen* (1975) 51 Cal.App.3d 89 [123 Cal.Rptr. 793]).

rounding the 1974 assessment. After granting summary relief in favor of Celeste limited to the punitive damages claim, the court explained that the scope of its ruling was intended to remove any basis "for imposing punitive damages or fraud penalties" thus eliminating any need to present evidence negating fraud "in relation to her behavior and conduct." The judgment against Celeste Grynberg was taken solely on the basis of her husband's conduct while acting as her agent. Celeste had ample opportunity to refute that theory of liability; yet, no contrary *evidence* was presented or suggested, either at trial or during the hearing on the motion for new trial.[10] The court ultimately concluded that no facts were shown to support a potentially different result. Even were we to assume that Celeste was somehow misled by the court's earlier isolated remarks, we would conclude that on the strength of the entire record, such error was harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment against Jack J. Grynberg and Celeste Grynberg, and each of them, is affirmed.

Elkington, J., and Rushing, J.,* concurred.

A petition for a rehearing was denied December 19, 1984, and appellants' petitions for a hearing by the Supreme Court were denied February 14, 1985.

---

[10]We agree with plaintiffs' argument that the declarations supporting Celeste's denial of knowledge of Grynberg's fraud are immaterial to the issue of liability premised on the agency relationship.

*Assigned by the Chairperson of the Judicial Council.