[No. B156424. Second Dist., Div. Four. May 21, 2002.]

KERRY C. COX et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CLARENCE L. SHIELDS, Real Party in Interest.

COUNSEL

Barry B. Novack for Petitioners.

No appearance for Respondent.

Thelen Reid & Priest, Curtis A. Cole, Kenneth R. Pedroza; Bonne, Bridges, Mueller, O'Keefe & Nichols, James D. Nichols and Henry X. Yekikian for Real Party in Interest.

Horvitz & Levy, S. Thomas Todd and Stephanie Rae Williams for California Medical Association as Amicus Curiae on behalf of Real Party in Interest.

OPINION

EPSTEIN, J.—In this case we hold that in a trial for medical malpractice, while evidence that plaintiff is receiving disability insurance benefits is admissible under Civil Code section 3333.1,[1] evidence of the tax treatment of those benefits is not.

### FACTUAL AND PROCEDURAL SUMMARY

Plaintiff Kerry C. Cox is a board-certified ophthalmologist. In February 1996, Dr. Clarence L. Shields performed surgery on plaintiff's shoulder. After surgery, plaintiff experienced substantial pain in his neck and shoulder, and loss of dexterity in his right hand. Further examination revealed he had a "non-union" clavicle fracture. The fracture did not heal on its own. Plaintiff had a bone graft to attempt to alleviate the problem, but his symptoms continued. He was unable to continue working, and sold his ophthalmology practice. He receives approximately $180,000 a year from disability policies. Because he paid the premiums for these policies with after-tax dollars, the disability benefits he receives are currently not taxed as income.

Plaintiff brought this action for legal malpractice against Dr. Shields and the Kerlan Jobe Orthopedic Institute; his wife, Kathy Cox, sued for loss of

---

[1]All statutory references are to the Civil Code unless otherwise stated.

consortium. The case was tried by jury in 1999, resulting in a defense verdict. Plaintiffs appealed, and in case No. B134941 we reversed the judgment based on juror misconduct and error in permitting expert opinion. The matter was remanded for new trial.

Before the start of the second trial, plaintiffs brought an in limine motion seeking to bar "[a]ny references suggesting that plaintiff's income disability payments are not taxable as income." The trial court denied this motion. Plaintiffs petitioned for a writ of mandate, asking this court to direct the trial court to grant the motion. In the interests of judicial economy, we intervened at this early stage and issued an alternative writ. We now grant the requested relief.

## DISCUSSION

The collateral source rule precludes a defendant from reducing a plaintiff's damages with evidence that the plaintiff received compensation from a source independent of the defendant. (*Pacific Gas & Electric Co. v. Superior Court* (1994) 28 Cal.App.4th 174, 176 [33 Cal.Rptr.2d 522].) "The idea is that tortfeasors should not recover a windfall from the thrift and foresight of persons who have actually or constructively secured insurance, pension or disability benefits to provide for themselves and their families. A contrary rule, it is feared, would misallocate liability for tort-caused losses and discourage people from obtaining benefits from independent collateral sources. [Citation.]" (*Arambula v. Wells* (1999) 72 Cal.App.4th 1006, 1009 [85 Cal.Rptr.2d 584].)

Section 3333.1, part of the Medical Injury Compensation Reform Act of 1975 (MICRA),[2] sets out an exception to the collateral source rule: "(a) In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or workers' compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. Where the defendant elects to introduce such evidence, the plaintiff may

[2]MICRA was enacted in response to a medical malpractice insurance "crisis," and contains a number of provisions, including section 3333.1, intended to reduce the cost of such insurance by limiting the amount and timing of recovery in cases of professional negligence. (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 111 [32 Cal.Rptr.2d 263, 876 P.2d 1062].)

introduce evidence of any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence."

■ The Supreme Court explained the purpose of this provision in *Barme v. Wood* (1984) 37 Cal.3d 174, 179 [207 Cal.Rptr. 816, 689 P.2d 446]: "Apparently, the Legislature's assumption was that the trier of fact would take the plaintiff's receipt of such benefits into account by reducing damages." The court continued, in a footnote: "Earlier drafts of section 3333.1, subdivision (a) required the trier of fact to deduct such collateral source benefits in computing damages, but—as enacted—subdivision (a) simply provides for the admission of evidence of such benefits, apparently leaving to the trier of fact the decision as to how such evidence should affect the assessment of damages. [¶] The purpose of section 3333.1, subdivision (a) has generally been viewed as an attempt to eliminate the so-called 'double recovery' obtained by plaintiffs who have their medical expenses paid by their own health insurance and still obtain damages for such expenses from defendant tortfeasors." (*Barme*, at p. 179, fn. 5.)

■ Defendants in this case successfully argued that section 3333.1 was not only an exception to the collateral source rule, but also an exception to the settled law in California that the trier of fact is not to consider evidence of tax considerations in determining damage awards. (*DePalma v. Westland Software House* (1990) 225 Cal.App.3d 1534, 1540 [276 Cal.Rptr. 214].) We conclude that the sound policies underlying preclusion of tax considerations for damage awards apply to section 3333.1 as well.

That policy was set out in *Rodriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626 [151 Cal.Rptr. 399], a personal injury action. In *Rodriguez*, the trial court granted the plaintiff's in limine motion to preclude evidence on the issue of income tax consequences, a decision in keeping with California law. (See *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 12 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398]; *Henninger v. Southern Pacific Co.* (1967) 250 Cal.App.2d 872, 878 [59 Cal.Rptr. 76]; see also *Canavin v. Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 539-542 [196 Cal.Rptr. 82] (conc. & dis. opn. of Staniforth, J.).) On appeal, the defendants urged the court to "recognize that, in arriving at a damages award, the exclusion of income tax consequences from jury consideration is no longer universally accepted, and that it is time for California to adopt a more modern and realistic approach in this regard." (*Rodriguez, supra*, 87 Cal.App.3d at p. 664.)

The Court of Appeal rejected this argument: "It is our view that adoption of the rule which would permit the introduction of evidence of future tax

consequences to affect the amount of an award in personal injury and wrongful death actions would open the door to *intense speculation* about the future on the part of the jury. The ramifications of such a rule of law could be immense. The less speculation that is involved in the jury's fact-finding process, the more likely will jury awards conform to the standard of fairness and justice between litigating parties." (*Rodriguez v. McDonnell Douglas Corp., supra*, 87 Cal.App.3d at pp. 667-668, original italics; see *DePalma v. Westland Software House, supra*, 225 Cal.App.3d 1534, 1544 [discussing the "complex and speculative nature" of predicting future tax consequences]; *Franck v. Polaris E-Z Go Div. of Textron, Inc.* (1984) 157 Cal.App.3d 1107, 1118 [204 Cal.Rptr. 321].)

Defendants argue that there would be greater juror speculation if this evidence were excluded than if it were admitted, since the jury could speculate both that the judgment is taxable, and that the disability benefits are taxable. The jury speculation which concerned the courts in *Rodriguez, DePalma*, and *Franck* was not whether damages would be taxable, but what that tax status might mean to the plaintiff in the future. "Experience teaches us it is very complicated and speculative to predict: (1) what portion of a damage award will actually be paid; (2) the year or years when a damage award will actually be received; (3) what the prevailing tax rate will be during the year(s) of receipt; and (4) how a damage award will be construed under the continuously changing Internal Revenue Code. We are concerned even the most sophisticated attempts to make a prediction about tax consequences would result in only guesswork which has little probative value." (*DePalma v. Westland Software House, supra*, 225 Cal.App.3d 1534, 1544.)

These same concerns, particularly the third and fourth, apply to the taxability of plaintiff's disability benefits. Admitting evidence of taxability would invite the jury to attempt to predict the effect of that tax status on the plaintiff's future income. This is no more appropriate for disability benefits than it is for damages. Evidence that the benefits are not subject to income tax also would open the door to additional speculative evidence, such as the tax deductible expenses plaintiff might have *if still able to work*, and the impact of those deductions on the net income plaintiff would have received from working.

Finally, if either party is concerned that the jury might speculate about tax consequences of a particular award in the absence of evidence on the question, that party may request an instruction that the jury is not to consider tax consequences. Whether such an instruction should be given is a matter for exercise of trial court discretion.

Section 3333.1 is a substantial departure from the collateral source rule, intended to permit the trier of fact to reduce the amount of damages awarded in medical malpractice cases by the amount *paid* to a plaintiff by other sources. (See *Barme v. Wood, supra,* 37 Cal.3d at p. 179.) The statute uses the words "evidence of *any amount payable* as a benefit to the plaintiff . . . ." (Italics added.) There is no language in the statute suggesting an intent to permit the trier of fact to consider whether the "amount payable" is also taxable. This, too, would constitute a substantial departure from settled law. The fact that the Legislature enacted an exception to the collateral source rule to prevent double recovery does not demonstrate its intent to change other rules of law. If the Legislature intended to provide this additional relief to malpractice defendants, it would have said so.

Defendants, supported by amicus curiae, also argue evidence that the disability benefits are tax-free is relevant and should be admitted on the issue of causation. The theory is that since plaintiff's tax-free disability payments are essentially the same as his prior net income after taxes, he has no financial incentive to resume the practice of ophthalmology, and an inference of malingering can be drawn. The cases cited to us all deal with the possibility of an exception to the collateral source rule where the evidence of other compensation to the plaintiff is shown to have "substantial probative value as proof that the plaintiff is a malingerer." (*Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 733 [94 Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224]; *Lafayette v. County of Los Angeles* (1984) 162 Cal.App.3d 547, 551-552 [208 Cal.Rptr. 668]; see also *Arambula v. Wells, supra,* 72 Cal.App.4th 1006, 1015.) We find no authority supporting introduction of evidence of the taxability of the other compensation for this purpose. The same policies which preclude its introduction for reduction of damages apply to its use on the issue of causation.

We conclude that information about the amount of tax that will be due on an amount payable to a plaintiff, whether it is the amount paid in damages or the amount paid in insurance benefits, "is a matter involving only the plaintiff and the government; a defendant may not seek benefit therefrom." (*Rodriguez v. McDonnell Douglas Corp., supra,* 87 Cal.App.3d at p. 666.) To permit evidence of the potential future tax consequences to affect the amount of an award would improperly invite juror speculation

### DISPOSITION

The petition for writ of mandate is granted. The trial court is directed to vacate its order denying petitioners' motion in limine to preclude evidence

of the taxability of the income disability payments, and to issue a new order granting the motion. Petitioners are entitled to recover their costs.

Vogel (C. S.), P. J., and Curry, J., concurred.